UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-6585-CIV-DIMITROULEAS/SELTZER

FRANK A. ROMANO and
MARIA ROMANO,

        Plaintiffs,

vs.

RUDOLPH LA VECCHIA, et al.,

        Defendants.

vs.

FIRST UNION NATIONAL BANK, N.A.,

        Garnishee.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS CAUSE came before the Court on the Motion for Sanctions Against Garnishee

First Union National Bank, N.A. (DE 42) filed by Plaintiffs, Frank A. Romano and Maria

Romano, and was referred to United States Magistrate Judge Barry S. Seltzer, pursuant

to Magistrate Rule 1(c) and (d), Local Rules of the United States District Court for the

Southern District of Florida.   For the reasons set forth herein, the undersigned

RECOMMENDS that the motion be DENIED.

I.    PROCEDURAL HISTORY

On or about April 11, 2001, Plaintiffs registered with this Court a District of Nevada

judgment that had been rendered in their favor and against Rudolph La Vecchia



($2,000,000), Diane Marie La Vecchia ($800,000), Rudolph M. La Vecchia ($490,000), and Beth Amanda La Vecchia ($192,240.09).

On April 20, 2001, Plaintiffs caused a Writ of Garnishment to be served upon First Union National Bank (DE 10). In response, First Union filed an Answer of Garnishee and Demand for Garnishment Deposit (DE 13). In the Answer, First Union represented that it was indebted to Defendants by virtue of a safe deposit box in the name of "Beth La Vecchia"[1] and a safe deposit box in the names of "Ma[r]jorie B. Rubin, Diane Marie La Vecchia."[2] First Union further represented that it had placed a "hold" on the two boxes in accordance with Florida law.

On January 14, 2002, Plaintiffs filed a Motion for Order Allowing Entry into Safe Deposit Box for Inventory (DE 27). On February 6, 2002, the Court granted the motion and ordered First Union to allow Plaintiffs "to gain entry into safe deposit boxes of Defendants Beth A. La Vecchia and Diane Marie La Vecchia, under the control of First Union National Bank, and take inventory of the items located therein" (DE 29). The Order further directed that "[t]he inventoried items then shall be placed back into the safe deposit boxes pending resolution and possible execution on the inventoried items."

On June 10, 2002, Plaintiffs filed the instant Motion for Sanctions Against Garnishee First Union National Bank, N.A. (DE 42). The motion recites that following the Court's

---

[1] First Union also asserted that it was indebted to Defendants "in the amount of $7.34 by virtue of an account in the name of 'Beth La Vecchia.'" Answer of Garnishee ¶ 1 A (DE 13).

[2] First Union later amended its answer that it was indebted to "Ma[r]jorie Rubin, Diane Marie La Vecchia" by virtue of a safe deposit box in their names. Nonetheless, the initial answer laid the groundwork for the dispute now before the Court.

February 6, 2002 Order authorizing entry into the safe deposit boxes, Plaintiffs' counsel went to the bank and, in the presence of First Union branch manager Joyce Karp, oversaw the drilling of two boxes - 784 and 879.  Box 784, which had previously been leased to Beth La Vecchia, was empty.  But box 879, which had previously been leased to Marjorie Rubin and Diane Marie La Vecchia, contained jewelry and personal papers.  Plaintiffs' counsel and Joyce Karp inventoried the contents of box 879, and on May 15, 2002, Plaintiffs filed a Notice of Filing Inventory.  On May 16, counsel spoke to Karp about having the contents of the box appraised.  According to Plaintiffs, Karp informed counsel that the contents had been forwarded to a third party and that Diane Marie La Vecchia had abandoned the safe deposit box.

On June 14, 2002, First Union Bank filed an Amended Answer of Garnishee and Demand for Garnishee Deposit (DE 44).  The Amended Answer omitted First Union's earlier representation that it was indebted to Defendants "by virtue of a safe deposit box in the name[s] of 'Ma[r]jorie B. Rubin, Diane Marie La Vecchia.'"

On July 3, 2002, the Court entered an Order to Show Cause (DE 51).  The Court directed First Union to show cause why it should not be held in contempt for violating its February 6, 2002 Order that "the inventoried items . . . be placed back into the safe deposit boxes pending resolution and possible execution on the inventoried items."

On July 12, 2002, First Union filed its Response in Opposition to Motion for Sanctions Against Garnishee (DE 57).  The Response sets forth the sequence of events that resulted in the release of the inventoried items; and it argues that such events render sanctions inappropriate.  In support of the Response, First Union proffered the affidavits of Joyce Karp and Robert Llelil, as well as pertinent documentation (DE 58).

3

On August 7, 2002, Plaintiffs filed their Reply to Response in Opposition to Motion for Sanctions Against Garnishee (DE 74). And on August 8, 2002, First Union filed its Sur-Reply (DE 76).

## II.   FINDINGS OF FACT

First Union has proffered the affidavits of Joyce Karp and Robert Llelil, as well as pertinent business records in support of the sworn statements. Plaintiffs have not proffered counter-affidavits, contradictory deposition testimony, or any evidence that would undermine First Union's proffer.

Joyce Karp averred that at all times material to this action she was employed by Wachovia Bank, formerly known as First Union National Bank, as a Customer Relations Manager at the Indian Trace Road branch in Weston, Florida. According to Karp, bank records show that on September 16, 1998, Diane M. La Vecchia and Marjorie Rubin leased safe deposit box number 879 from the bank. They initially leased it as a dual access box; therefore, the customers could access the box only with the assistance of a bank employee. La Vecchia and Rubin subsequently executed an addendum to their lease, converting box 879 to a single access box; thereafter, the customers could access the box without assistance, and the bank kept no record of entry. The bank prepared two keys for box 879 and gave both keys to the customers. Bank records further reflect that on April 19, 1999, Beth La Vecchia leased box number 784. The lease on box 879 (the Marjorie Rubin and Diane La Vecchia box) expired on September 16, 1999, and the lease on box 784 (the Beth La Vecchia box) expired on April 19, 2000.

Karp explained that when a safe deposit box lease expires, the bank's practice is to let the box sit unopened for three years, after which the box is drilled and the contents,

4

if any, escheated to the State.  But if a customer abandons the box by returning the customer keys to the bank, that customer's name is removed from the box, and the box becomes available for lease to another customer.  With respect to box number 879, Karp explained that two customer keys were returned to the bank at an unknown point in time; the bank, however, has no record of the keys' return.  By virtue of this clerical oversight, the bank's system continued to show box 879 under the names of Diane La Vecchia and Marjorie Rubin.  Therefore, after the lease expired on September 16, 1999, box 879 sat unopened, waiting for the three year escheat period to expire, rather than being made available immediately for re-letting.  However, the returned keys for box 879 had been placed in a container of customer keys for available boxes maintained at the bank.

On April 20, 2001, a Writ of Garnishment (DE 10) was issued as to First Union, triggering an interoffice request at the bank to seal both boxes 784 and 879.  On April 23, 2001, Karp had both boxes sealed by "unplugging," a process that renders the branch lock operable so that a box cannot be opened without a branch employee and record of entry. Box 879 remained unplugged and sealed until January 22, 2002.

On January 22, 2002, Robert Llelil sought to lease a safe deposit box from the bank. Llelil executed a single access Safe Deposit Box Lease Agreement, and Karp assigned him box 885.  Llelil and Karp then attempted to open box 885 but were unable to do so. Karp, therefore, looked into the container of available box customer keys and retrieved the keys for box 879, the box that had previously been leased to Marjorie Rubin and Diane La Vecchia.  Karp assumed box 879 was available for lease because its keys had been placed back into the container.  Karp gave Llelil the keys to box 879; however, she failed to enter into the First Union system the change in Llelil's box number from 885 to 879.

5

Accordingly, the First Union system reflected that Llelil was the lessee of box 885, rather than box 879.  Nonetheless, Karp avers:

> Box no. 879 was empty at the time I leased the box to Mr. Llelil. I personally observed box no. 879 opened on January 22, 2002 and saw that it was empty.  To my knowledge, no one had access to box no. 879 from the time it was sealed on April 23, 2001 and the time it was opened at my direction on January 22, 2002.  Therefore, box no. 879 must have been empty at the time it was sealed on April 23, 2001 in response to the garnishment.

> After January 22, 2002, Mr. Llelil had access to box no. 879 for his personal use.

Karp Aff. ¶¶ 12 and 13  (DE 58).

In April 2002, Karp was provided with a copy of the Court's February 6, 2002 Order authorizing the entry into the "safe deposit boxes of Defendants Beth A. La Vecchia and Diane Marie La Vecchia" and the inventory of the contents.  Karp arranged to meet with Plaintiffs' counsel to inventory the contents.

On April 23, 2002, Karp and Plaintiffs' counsel, accompanied by a locksmith, entered the bank's safe deposit room and oversaw the drilling of boxes 784 and 879.  Box number 784 (the Beth La Vecchia box) was empty.  To Karp's knowledge, no one had access to box 784 from the time it was sealed on April 23, 2001, to the time it was opened for Plaintiffs' counsel on April 23, 2002.  But Box 879 (the Marjorie Rubin/Diane La Vecchia box) contained jewelry and personal papers.  Plaintiffs' counsel and Karp inventoried the items, and counsel was provided with a copy of the inventory.  While inventorying the papers, however, Karp recognized the name "Robert Llelil" on a document - "First Amendment to Declaration of Trust" - as the name of another bank customer.  According to Karp, she told Plaintiffs' counsel "that there must be a mistake, that box no. 879

appeared to be Mr. Llelil's box, and not a box that belonged to Diane La Vecchia and Marjorie Rubin." Karp Aff. ¶ 16 (DE 58). Plaintiffs' counsel told Karp to investigate and call him after she determined the error.

Karp examined the bank records. On the following day (April 24, 2002), she called Robert Llelil to confirm that he had leased box 879, not box 885. Llelil appeared later that day at the bank and confirmed that he had leased box 879 and that its contents belonged to him. After Karp advised him of the mistaken inventory, Llelil closed out his lease on box 879, removed its contents, and leased another safe deposit box at the bank.

According to Karp, the April 23, 2000 inventory of number 879 was "clearly a mistake." Karp Aff. ¶ 18 (DE 58).

> I know of my personal knowledge that box no. 879 was empty at the time it was garnished and sealed in April 2001 because I personally observed the box as empty when it was unsealed in January 2002. The contents of box no. 879 on April 23, 2002 belonged to Mr. Llelil, who had rented the box three months earlier, and not to Diane La Vecchia or Marjorie Rubin.

Id.

On May 6, 2002, Karp received a call from Plaintiffs' counsel, seeking to arrange for a jewelry appraiser to inspect the contents of box 879. Karp at that time explained the error to counsel.

First Union also proffered the Affidavit of Robert Llelil (DE 58). He averred that he had leased box 879 from Wachovia Bank, formerly known as First Union National Bank, at the Indian Trace Road branch in Weston, Florida, from January 22, 2002, to April 24, 2002. He further averred that he had inspected the box when he first leased it and that he had found it empty. Therefore, all of the contents of box 879, as reflected on the April 23,

2002 inventory, had been placed there by and belonged to him (Llelil).   On April 24, 2002, after learning from Joyce Karp that the bank had gained entry to his safe deposit box - box 879 - and examined the contents, Llelil removed his property and closed the box.  Finally, Llelil averred that he does not know and has never met any of the Plaintiffs or Defendants in this action, nor is he aware of any basis on which they might have a claim or interest in his property.  In summary, he averred: "At the time I leased box 879, it was empty.  All of the contents I removed from box no. 879 on April 24, 2002 had been placed there by me and were my sole and exclusive property."  Llelil Aff. ¶ 7 (DE 58).

The uncontroverted evidence establishes that Diane La Vecchia and Marjorie Rubin had leased box 879 from September 1998 to September 1999.  By the time the Writ of Garnishment was served in April 2001, box 879 had been abandoned by Diane La Vecchia and Marjorie Rubin for more than a year.   In January 2002, Robert Llelil leased box 879 and, thereafter, placed certain possessions into the box for safe keeping.  Therefore, when Joyce Karp and Plaintiffs' counsel opened box 879 in April 2002, they observed and inventoried property that belonged to Robert Llelil, not to Marjorie Rubin or Diane La Vecchia.

III.    THE LAW

Plaintiffs seek sanctions against First Union for violating Florida law governing the obligations of garnishees.  In pertinent part, Florida Statutes provide:

> (1) Service of the writ shall make garnishee liable for all debts due by him or her to defendant and for any tangible or intangible personal property of defendant in the garnishee's possession or control at the time of the service of the writ or at any time between the service and the time of the garnishee's answer.  Service of the writ creates a lien in or upon any such debts or property at the time of service or at the time such

8

debts or property come into the garnishee's possession or control.

(2) The garnishee shall report in its answer and retain . . . any deposit, account, or tangible or intangible personal property in the possession or control of such garnishee . . . .

Fla. Stat. § 77.06(1) and (2).

Plaintiffs further seek civil contempt sanctions against First Union for violating the Court's February 2002 Order. The United States Code grants to a court the power to punish such contempt of its authority as "[d]isobedience or resistance to its lawful writ, process, order, rule, decree or command." 18 U.S.C. § 401(3). In South Beach Suncare Inc. v. Sea & Ski Corp., No. 98-1114-Civ-Moreno, 1999 WL 350458, at *5 (S.D. Fla. May 17, 1999), Magistrate Judge William Turnoff summarized the showings required in a civil contempt proceeding:

[D]istrict courts have inherent and statutory power to enforce their decrees and to punish violators for contempt. Roadway Express. Inc. v. Piper, 447 U.S. 752, 764-65 (1980). Civil contempt is a "sanction imposed to compel obedience to a lawful court order or to provide compensation to a complaining party." New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1350 (2d Cir.1989), cert. denied, 495 U.S. 947 (1990). However, "failure to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt." Dunn v. New York State Dep't of Labor, 47 F.3d 485, 490 (2d Cir.1995).

In order to establish a prima facie case of contempt a petitioner must first prove by clear and convincing evidence that the respondent violated a prior court order. See Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1529 (11th Cir.), cert. denied sub nom. Weiss v. Commodity Futures Trading Comm'n, 506 U.S. 819 (1992); Piambino v. Bestline Prods., Inc., 645 F.Supp. 1210, 1213 (S.D.Fla.1986). Unlike criminal contempt proceedings, a party petitioning for civil contempt does not have to establish that the respondent intended to violate, or

9

willfully violated, the order. See McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1948); Securities Exchange Comm'n v. American Bd. of Trade, Inc., 830 F.2d 431, 441 (2d Cir.1987); Piambino, 645 F.Supp. at 1213. That being said, however, a party should only be held in civil contempt for its failure to comply with a court order if: (1) the order is clear and unambiguous; (2) proof of noncompliance is clear and convincing; and (3) the respondent has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." Powell v. Ward, 643 F.2d 924, 931 (2d Cir.), cert. denied, 454 U.S. 832 (1981). Finally, in analyzing a respondent's diligence, courts "examine the defendant's actions and consider whether they are based on a good faith and reasonable interpretation of the court order." Schmitz v. St. Regis Paper Co., 758 F.Supp. 922, 927 (S.D.N.Y.1991).

Id. And, as this Circuit has stated, "[c]onduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance." Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990)(citations omitted). See also Smith Barney, Inc. v. Hyland, 969 F. Supp. 719 (M.D. Fla. 1997)(same).

IV.   ANALYSIS

Plaintiffs argue that First Union's decision to release the contents of box 879 to a third party violated its statutory obligation as garnishee. Plaintiffs contend that, as a result, they lost the opportunity to levy upon the jewelry and gems "contained in Defendants' safety deposit box." Motion at 6-7 (DE 42)(emphasis added). The undersigned, however, does not find that First Union violated the statute or that Plaintiffs suffered any damages.

First Union's initial Answer of Garnishee notwithstanding, the uncontroverted evidence shows that Defendants no longer had a First Union safe deposit box by the time the writ issued. Indeed, other than the $7.34 remaining in Beth La Vecchia's bank account, there were no debts due by First Union to Defendants and no property of Defendants in

10

First Union's custody or control.  Because there existed no debt or property of Defendants upon which to create a lien, there was no statutory violation.  And because Defendants no longer had a First Union safe deposit box, there was no jewelry or other property upon which Plaintiffs could levy.

Plaintiffs further argue that First Union failed to comply with the Court's February 6, 2002 Order directing that the contents of the safe deposit box be inventoried and placed back into the box pending resolution and possible execution.  Although Plaintiffs accurately recite the provision of the Order directing that the inventoried items be placed back into the box pending possible execution, a closer reading of the Order reveals that that provision is directed solely to property found in safe deposit boxes that belong to Beth A. La Vecchia and Diane Marie La Vecchia; the Order is not directed to the contents of boxes that belong to other individuals.[3]

The evidence here establishes that Defendants Beth A. La Vecchia and Diane Marie La Vecchia did not have a First Union safe deposit box when the April 2001 Writ of Garnishment, let alone the February 2002 Court Order, issued; the leases on both the Beth

---

[3]     The Court's February 6, 2002 Order states:

> Garnishee First Union National Bank shall allow Plaintiffs Frank A. Romano and Maria Romano to gain entry into <u>safe deposit boxes of Defendants Beth A. La Vecchia and Diane Marie La Vecchia under the control of First Union National Bank,</u> and take inventory of the items located therein.  Plaintiff shall file with the court an inventory listing the items located in the safe deposit boxes.  The inventoried items then shall be placed back into the safe deposit boxes pending resolution and possible execution on the inventoried items.

Order ¶ 2 (DE 29)(emphasis added).

La Vecchia and Diane La Vecchia boxes had expired more than a year before the garnishment and the subsequent Court Order. The box that Plaintiffs' counsel and Joyce Karp inventoried in April 2002 - box 879 - had been re-let three months earlier to Robert Llelil, an individual having no relationship to either Plaintiffs or Defendants. The drilling and inventorying of box 879, therefore, was based on a mistake of fact, a mistake that Joyce Karp realized and disclosed to Plaintiffs' counsel on the date they inventoried the box. Because neither Beth A. La Vecchia nor Diane Marie La Vecchia had any safe deposit boxes or any other property (other than the $7.34 in Beth La Vecchia's account) at First Union on February 6, 2002, there existed no property to retain pending execution. Accordingly, First Union did not disobey the Court's Order.

The undersigned, however, hastens to add that First Union's actions were ill-considered. Although First Union has explained its errors and shown that its actions did not violate the letter of the statute or of this Court's Order, the bank's actions may well have violated the spirt of each; the statute and the Order contemplate a role for the Court in the disposition of the property. Furthermore, prudence dictates that rather than acting unilaterally (in releasing the box contents), First Union should have first amended its Answer, disclosed to the Court the bank error upon which the February 2002 Order was predicated, and requested the Court's guidance as to the disposition of the property. Instead, it compounded its clerical errors with a seeming disregard for the role of the Court. First Union would be well-advised to re-evaluate its internal record-keeping and garnishment procedures. Nonetheless, given that neither Beth La Vecchia nor Diane Marie La Vecchia actually had a safe deposit box at the pertinent times, First Union's imprudent conduct does not amount to sanctionable or contumacious conduct.

V.   CONCLUSION

For the foregoing reasons, the undersigned respectfully RECOMMENDS that the Motion for Sanctions Against Garnishee First Union National Bank, N.A. (DE 42) be DENIED.

The parties shall have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. See 28 U.S.C. S 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE AND SUBMITTED at Fort Lauderdale, Florida this 21st day of May 2003.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Honorable William P. Dimitrouleas
United States District Judge

Gregory M. Garno, Esquire
Genovese Joblove & Battista, P.A.
100 Southeast 2nd Street, 36th Floor
Miami, Florida 33131

David J. Smith, Esquire
Kaufman Dickstein & Gunspan, P.A.
4650 First Union Financial Center
200 S. Biscayne Boulevard
Miami, Florida 33131

Stanley B. Erskine, Esquire
Law Offices of Erskine & Fleisher
Suite 300 - 55 Weston Road
Fort Lauderdale, Florida 33326

Michael S. Perse, Esquire
Kluger Peretz Kaplan & Berlin, P.A.
201 South Biscayne Boulevard, #1700
Miami, Florida 33131

Mr. Rudolph La Vecchia
Dianne Marie La Vecchia
n/k/a Diane Marie Oakes
2538 Monterey Court
Weston, Florida 33327

Ms. Beth La Vecchia
Rudolph M. La Vecchia
2510 Monterey Court
Weston, Florida 33327

Ms. Marjorie B. Rubin
22568 Caravelle Center
Boca Raton, Florida 33433-59